UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

GERALD LEE HUDSON, JR.,

        Petitioner,

                                          Case No. 13-12254
v.                                     HON. TERRENCE G. BERG

JEFFREY LARSON,

        Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS (DKT. 1); (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

Gerald Lee Hudson, Jr., ("Petitioner"), on parole supervision with the Holland Probation Office, with a supervision discharge date of May 4, 2015, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his conviction for operating while intoxicated, third offense, Mich. Comp. Laws § 257.625(1); Mich. Comp. Laws § 257.625(9); malicious destruction of police property, Mich. Comp. Laws § 750.377b; and resisting and obstructing a police officer, Mich. Comp. Laws § 750.81d. For the reasons stated below, the application for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**I.  FACTUAL BACKGROUND**

Petitioner was convicted of the above offenses following a jury trial in the Ottawa County Circuit Court. Katherine Infante drove Petitioner to Buffalo Wild Wings to meet with Petitioner's future boss. (Tr. 1/5/2011, pp. 186-187). Petitioner

drank beer at the restaurant and left with Infante an hour and a half later. *Id*. Petitioner and Infante argued and Infante took Petitioner's house keys and locked herself in his house. Petitioner then drove to his nephew's house. *Id*. at 188-190. Petitioner sat outside his nephew's house for a while and then drove back to his house, yelling to Infante to let him in. *Id*. at 99-100. Petitioner broke a glass window and Infante let him inside, fearing that he was losing blood from a cut on his right wrist. *Id*. at 99-103, 193.

The police were called. Deputy Michael Hallmeyer found Petitioner unconscious at the top of the stairs, moved him to a couch, and tried to treat his lacerations. Based on the statements of other witnesses that he was driving drunk, Petitioner was placed in the back of a patrol car. *Id*. at 107, 152-154. Petitioner moved his cuffed hands from behind his back, flailing his arms, legs and body while spouting a list of expletives at the officers, and then pulled the patrol car door shut on Officer VanderLaan's finger. *Id*. at 155-156, 213-214. Officer Hallmeyer left Petitioner in the patrol car to type up a warrant and to test Petitioner's blood and returned to find the back window on the passenger side of his patrol car had come away from its mountings as a result of Petitioner kicking out the window from inside the car. *Id*. at 157, 216-217. Petitioner's blood was found to contain 0.27 percent alcohol, over three times the legal driving limit of 0.08 percent. *Id*. at 126-127

At trial, Petitioner sought to act as his own co-counsel equally with his attorney; he did not request to exercise his right to represent himself, but sought to

act as co-counsel, equal to his trial counsel in representation. (Motion Tr. 1/5/2011, pp. 3-4). When asked whether he understood the dangers of self-representation, Petitioner answered, "I understand what you are saying, but I never said that I wanted to represent myself. I said I wanted to be co-counsel." *Id.* As the Michigan Court of Appeals explained:

> Initially, there was confusion concerning the nature of defendant's request to act as co-counsel. Five months before trial, the trial court permitted defendant's appointed counsel to withdraw and appointed attorney David Hall—in whom defendant expressed confidence—to represent defendant. One month before trial at a bond hearing, defendant stated, "I am supposed to be co-counsel in this case according to the transcript records." Defendant apparently was referring to the proceeding at which Hall was appointed counsel, noting that "the whole appointment of counsel ... was on the record." The trial court responded it would review the transcript and took no other action.
>
> On the first day of trial, before voir dire of the jury venire, the trial court opened the record by noting that it understood that defendant wanted to represent himself with standby counsel. Defendant clarified that he was merely requesting to act as co-counsel: "to [be] an equal with Mr. Hall, not representing myself." The trial court advised defendant regarding his right to counsel, the dangers of self- representation, which defendant stated he understood, and that defendant would not be permitted to disrupt the court proceedings. With respect to acting as co-counsel, the trial court advised defendant that only one counsel would be permitted to act at any given time. The trial court asked defendant "[i]s it your decision to represent yourself, at least in part, and are you making that decision voluntarily?" Defendant responded, "In part that would be correct, Your Honor." The trial court found that "defendant unequivocally has waived his right to counsel in part," noting that "Mr. Hall will be present through the trial and take those duties which the defense and he agrees will be assigned to him." The court also determined defendant's waiver of counsel was knowing, voluntary and intelligent, and that defendant's self-representation would not unduly disrupt or inconvenience the court.

3

*Hudson,* 2012 WL 6049652, at * 2.

The Michigan Court of Appeals further noted that trial counsel "conducted the voir dire of the jury, made an opening statement, presented defendant's testimony, participated in some cross-examination, and delivered a closing argument. Defense counsel also advised defendant regarding objections to the prosecution's evidence." *Hudson*, 2012 WL 6049652, at * 3. The Court of Appeals found that Petitioner did not waive his right to counsel, but merely sought to act as co-counsel. Nevertheless, the Court of Appeals also found that, to the extent that Petitioner's request for hybrid representation required a valid waiver of counsel, the record showed that Petitioner knowingly and intelligently waived his right to counsel. *Hudson,* 2012 WL 6049652, at * 2.

Petitioner was sentenced on February 21, 2011. (Tr. 2/21/2011). On the charge of operating while intoxicated, Petitioner was sentenced to a term 24 to 120 months. *Id.* at p. 4. On the charge of malicious destruction of fire or police property, Petitioner was sentenced to a term of 24 to 96 months. *Id.* Lastly, on the charge of resisting and obstructing, Petitioner was sentenced to a term of 21 to 48 months. *Id.* All sentences ran concurrently. *Id.* Petitioner's conviction was affirmed on appeal. *People v. Hudson*, No. 302876, 2012 WL 6049652, at *3 (Mich. Ct. App. Nov. 29, 2012).

Petitioner seeks a writ of habeas corpus on the following grounds:

> I. The trial court violated Petitioner's Sixth Amendment right to counsel when the trial court failed to establish that Petitioner's waiver of counsel was knowing, voluntary, and intelligent and failed to warn Petitioner of the nature of the accusation of the

4

charges against him and the range of allowable sentences for each charge.

II. Petitioner's Sixth and Fourteenth Amendment right's (sic) were violated by ineffective assistance of counsel for not filing necessary motions, subpoenas, curriculum vitae for expert witness or at a minimum some type of investigation into what evidence was in the possession of the prosecution and police officers when asked by the Petitioner while incarcerated and by not providing a compulsory process for obtaining witnesses in defenses (sic) favor.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a

state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could

6

disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have been previously rejected in the state courts, it preserves the authority of a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

7

## III.  ANALYSIS

### A.  Sixth Amendment Right to Counsel

Petitioner alleges that his waiver of the right to counsel was not knowing, voluntary and intelligent because the trial court failed to warn him of the nature of the charges against him and the range of allowable sentences for each charge, prior to granting Petitioner's request to serve as co-counsel and to assist his attorney in his representation.

Criminal defendants have a constitutional right to conduct their own defense at trial, if they voluntarily and intelligently elect to do so.  *Martinez v. Ct. App. of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 154 (2000); *Faretta v. California.*, 422 U.S. 806, 807 (1975).  However, the right to self-representation is not absolute.  *Martinez*, 528 U.S. at 161.  Moreover, a defendant's request for self-representation must be made clearly and unequivocally.  *See Faretta*, 422 U.S. at 835; *see also U.S. v. Martin,* 25 F. 3d 293, 295 (6th Cir. 1994) ("[t]o assert the right of self-representation, a defendant must do so unequivocally.").

The United States Supreme Court has held that a waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege."  *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  A defendant's waiver of his right to counsel must "be knowing, voluntary, and intelligent."  *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  The waiver must be "done with sufficient awareness of the relevant circumstances."  *Id*. at 81 (internal

8

quotation marks omitted). It is the criminal defendant's burden to prove that he or she "did not competently and intelligently waive" his or her right to the assistance of counsel. *Id.* at 92.

Before a criminal defendant waives his or her right to counsel, he or she "should be made aware of the dangers and disadvantages of self-representation," so that the record establishes that the defendant knows what he or she "'is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Petitioner is not entitled to relief on his claim because he did not waive his right to counsel but merely asked the trial court that he be permitted to act as co-counsel to his attorney. As stated above, the Michigan Court of Appeals noted that trial counsel "conducted the voir dire of the jury, made an opening statement, presented defendant's testimony, participated in some cross-examination, and delivered a closing argument. Defense counsel also advised defendant regarding objections to the prosecution's evidence." *Hudson*, 2012 WL 6049652, at * 3.

A defendant in a criminal case does not have a constitutional right to hybrid representation. *U.S. v. Cromer*, 389 F. 3d 662, 681, n. 12 (6th Cir. 2004); *U.S. v. Green*, 388 F. 3d 918, 922 (6th Cir. 2004). In *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984), the Supreme Court observed that "*Faretta* does not require a trial judge to permit 'hybrid' representation" and that "[a] defendant does not have a constitutional right to choreograph special appearances by counsel." The Petitioner's request to represent himself along with the assistance of counsel

9

cannot be considered a clear and unequivocal invocation of his right to self-representation. "Because the assertion of the right to self-representation necessarily involves a waiver of the constitutional right to counsel, and given the importance of the right to counsel, we think the wisest course is to require a clear and unequivocal assertion of a defendant's right to self-representation before his right to counsel may be deemed waived." *Cromer,* 389 F. 3d at 682-83. Indeed, "requiring an articulate and unmistakable demand of the right to proceed *pro se* decreases the danger of a savvy defendant manipulating these two mutually exclusive rights to put the [trial] court in a Catch-22." *Id.*

The *Faretta* warnings are thus required only when a criminal defendant clearly and unequivocally asserts his right to proceed *pro se. Cromer*, 389 F.3d at 682. In *Cromer,* the Sixth Circuit held that a federal criminal defendant who sought to supplement his attorney's representation by asking some questions to a witness, and did not seek to replace his attorney, was not entitled to receive the *Faretta* inquiry and warnings concerning self-representation, because the defendant did not clearly and unequivocally assert his right to proceed *pro se* and he continued to receive substantial assistance from counsel even while he was engaged in questioning. *Id.* at 683. Other cases have reached the same conclusion. *See Peters v. Chandler*, 292 F. App'x 453, 457-58 (6th Cir. 2008) (trial court's failure to hold a *Faretta* hearing prior to allowing defendant to argue his motion to withdraw guilty plea *pro se* did not violate defendant's Sixth Amendment rights; defendant made no clear and unequivocal demand to proceed *pro se* and, instead,

his motion to withdraw his plea requested appointment of counsel, and when the trial court indicated to him that counsel would remain his lawyer, defendant nodded his head in agreement). Because Petitioner did not waive his right to counsel, but merely sought to act as co-counsel, the trial court was not required to warn him of the dangers of self-representation.

Moreover, to the extent that Petitioner's request for hybrid representation required a valid waiver of counsel, the Michigan Court of Appeals found that Petitioner knowingly and intelligently waived his right to counsel. *Hudson*, 2012 WL 6049652, at * 2.

The Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Tovar*, 541 U.S. at 88. The information that a criminal defendant must have in order to make an intelligent election "will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Id*. The failure of a district court in a federal criminal case to give a particular prophylactic warning and conduct a particular inquiry in determining whether a defendant should be permitted to waive his or her right to counsel does not in and of itself require reversal of a conviction. *See U.S. v. McDowell*, 814 F. 2d 245, 248-49 (6th Cir. 1987). There is thus no clearly established federal law, as determined by the Supreme Court, which requires any specific colloquy to determine whether a defendant's waiver of counsel was made with "eyes open." *Mack v. Holt*, 62 Fed. App'x 577, 580 (6th Cir.

2003); *see also Sullivan v. Pitcher*, 82 Fed. App'x 162, 165 (6th Cir. 2003) (a formal inquiry into a defendant's desire to proceed pro se "is not a sine qua non of constitutional waiver").

The Michigan Court of Appeals found that Petitioner did not request to represent himself and was merely seeking to act as co-counsel, equal to his trial counsel in assisting in his own representation.

While Petitioner claims that his waiver was invalid because he was never informed by the judge of the sentence enhancements that he faced as a third felony habitual offender, this claim is unfounded because Petitioner did not actually seek to enter any waiver of representation by trial counsel, rather, Petitioner requested to act as co-counsel. There is no clearly established Supreme Court precedent which requires that *Faretta* warnings on the dangers of self-representation be given where a defendant seeks to merely supplement his counsel's representation by acting as co-counsel, as Petitioner did in this case, as opposed to when a defendant clearly chooses to proceed *pro se*. *See Cromer*, 389 F. 3d at 682–83. As such, failure to inform Petitioner regarding any sentence enhancement would not entitle Petitioner to habeas relief. Furthermore, because Petitioner was represented at all times by trial counsel, the oversight to inform him about the possibility of a sentence enhancement was harmless beyond a reasonable doubt. *Hudson,* 2012 WL 6049652, at * 3. Petitioner is not entitled to relief on his first claim.

B. **Ineffective Assistance of Trial Counsel**

Petitioner next alleges that trial counsel was ineffective for not filing necessary motions, subpoenas, curricula vitae for expert witnesses, obtaining witnesses to testify in Petitioner's favor, or at a minimum investigating what evidence was in the possession of the prosecution and police officers.

Respondent contends that Petitioner's second claim is unexhausted because it was never presented to the Michigan Court of Appeals. Petitioner's second claim was raised by Petitioner for the first time in his application for leave to appeal with the Michigan Supreme Court.

When an appellant fails to appeal an issue to the Michigan Court of Appeals, the issue is considered waived before the Michigan Supreme Court. *Lawrence v. Will Darrah & Assoc's, Inc.*, 445 Mich. 1, 4, fn. 2; 516 N.W. 2d 43 (1994); *Butcher v. Treasury Dep't.*, 425 Mich. 262, 276; 389 N.W. 2d 412 (1986). Therefore, Petitioner's failure to raise this claim in his appeal to the Michigan Court of Appeals will preclude the Michigan Supreme Court from considering the new issue that Petitioner raises in his application for leave to appeal before that court.

More importantly, raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because Petitioner failed to present his second claim on his direct appeal with the Michigan Court of Appeals, his subsequent presentation of this claim to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes.

13

*See Skinner v. McLemore*, 425 Fed. App'x 491, 494 (6th Cir. 2011); *Farley v. Lafler*, 193 Fed.App'x 543, 549 (6th Cir. 2006).

Nonetheless, a habeas Petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher*, 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c). Because Petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address Petitioner's claim, rather than dismiss the petition on exhaustion grounds. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

Petitioner alleges that trial counsel was ineffective by failing to file motions, subpoenas, curricula vitae of expert witnesses or investigate evidence in the possession of the police and prosecution.

To show that he was denied the effective assistance of counsel, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within

14

the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F. 3d 372, 379 (6th Cir. 2011) (quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

While Petitioner argues that his trial counsel was ineffective for failing to file motions, subpoenas, curricula vitae of expert witnesses or investigate evidence in the possession of the police and prosecution, Petitioner provides no details as to which specific motions, subpoenas, or curricula vitae should have been filed by counsel, but which counsel allegedly failed to file; nor does Petitioner identify what evidence counsel failed to investigate.

Because his allegations are conclusory and unsupported, Petitioner is not entitled to relief on his claim. Conclusory allegations by a habeas petitioner,

15

without any evidentiary support, do not provide a basis for habeas relief. *See, e.g., Washington v. Renico*, 455 F. 3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief). Petitioner's ineffective assistance of counsel claim is meritless.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254

Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  *See also Millender v. Adams,* 187 F. Supp. 2d at 880.  The Court will also deny Petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous.  *See Allen v. Stovall,* 156 F. Supp. 2d at 798.

//

//

//

//

//

//

//

//

//

//

//

//

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal in forma pauperis.

**SO ORDERED**.


Dated:  April 27, 2015                                s/Terrence G. Berg
                                                      TERRENCE G. BERG
                                                      UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was electronically submitted on April 27, 2015, using the CM/ECF system; a copy of this Order was also mailed to 7569 Louise Avenue, Jenison, MI 49428 directed to Petitioner's attention.

                                                      s/A. Chubb
                                                      Case Manager

18